HEALTH COST CONTROLS, Plaintiff and Counterdefendant-Appellee, v. RICHARD SEVILLA et al., Defendants and Counterplaintiffs-Appellants and Third-Party Plaintiffs-Appellants, (Health Cost Controls of America, Inc., et al., Third-Party Defendants-Appellees).

First District (5th Division)   No. 1—98—1695

Opinion filed August 27, 1999.

Clinton A. Krislov and Jonathan Nachsin, both of Krislov & Associates, Ltd., and Edward M. Burnes, *pro se*, both of Chicago, for appellants.

David A. Belofsky, Douglas M. Belofsky, and Lance R. Minor, all of Belofsky & Belofsky, P.C., of Chicago, for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Health Cost Controls (HCC) filed a complaint against defendants Richard Sevilla and Edward M. Burnes, the attorney for Sevilla, in the circuit court of Cook County, seeking to recover reimbursement and repayment of medical benefits paid to Sevilla from the settlement that Sevilla obtained from a third-party tortfeasor as a result of an automobile accident. In turn, defendants Sevilla and Burnes filed a class action counterclaim, asserting that the common fund doctrine required a reduction for attorney fees and expenses from the amount HCC claimed for all liens on class member recoveries. On April 3, 1998, the trial court dismissed HCC's complaint for lack of subject matter jurisdiction and dismissed defendants' counterclaim.

Defendants now appeal the April 3, 1998, order and other trial court rulings, asserting that the trial court improperly (1) dismissed HCC's complaint; (2) dismissed defendants' counterclaim; (3) denied sanctions against HCC; (4) struck Burnes' affidavit; and (5) denied leave to amend defendants' original class certification motion.

We find that the trial court had subject matter jurisdiction over both HCC's complaint and defendants' counterclaim. Thus, we reverse the trial court's order of April 3, 1998, and remand the matter to the circuit court. In addition, we affirm the denial of sanctions against HCC, finding that the trial court did not abuse its discretion. Based on these holdings, we need not consider the other contested rulings by the trial court.

The underlying, undisputed facts, as alleged in HCC's complaint and acknowledged by defendants, are quite straightforward and typical of the body of reimbursement cases. Sevilla was covered under a health insurance policy issued by Continental Assurance Company (CNA) through his employer, Central Can Company. Sevilla was in a car accident, suffered personal injuries and retained private counsel (Burnes) to sue the people allegedly responsible for the accident. In turn, HCC, on behalf of the health insurer (CNA), sent a notice of lien to Burnes for the amount of money the insurer had paid for Sevilla's medical care. Sevilla and the alleged tortfeasor ultimately entered into a settlement agreement. Thereafter, HCC sought to obtain reimbursement from Sevilla, as expressly authorized in the reimbursement provision of the health insurance policy. The settling tortfeasor's insurance carrier issued a check for the amount of HCC's claimed lien and made the check payable to Sevilla, Burnes and HCC. HCC was given possession of the check.

After HCC had possession of the check, the dispute began. Sevilla and Burnes decided not to endorse the check, claiming that HCC was not entitled to the full amount of the check. Rather, the amount of recovery was subject to the common fund doctrine and, therefore, must be reduced by one-third for attorney fees incurred in obtaining the settlement.

On April 28, 1994, HCC filed its complaint in the circuit court of Cook County, seeking to require Sevilla and Burnes to endorse the check in satisfaction of HCC's lien. The complaint stated that HCC was appointed and authorized to administer and prosecute CNA's rights to reimbursement and subrogation under the policy. The reimbursement provision stated:

"In no event will the amount of reimbursement to Us [the insurer] exceed the lesser of:

1. The amount actually paid under the policy; or

2. The amount actually recovered from that part of the judgment or settlement in excess of the amount necessary to fully reimburse the Covered Person for out-of-pocket expenses incurred, including attorney fees."

In its complaint, HCC asked the circuit court to declare that HCC was entitled to the full amount CNA had paid for Sevilla's medical expenses ($2,483.71) and to enjoin defendants from refusing to execute the check.

In April 1995, defendants filed their answer and affirmative defenses. Defendants primarily disputed HCC's entitlement to the total amount of the check ($2,483.71). In their answer, defendants asserted "that the Plan is obligated to bear the expenses of Defendant Sevilla's attorneys incurred in obtaining a recovery for him." As an affirmative defense, defendants asserted that "[u]nder the equitable 'fund doctrine,' the Plan and HCC must bear the proportionate share of the costs and expenses incurred by Defendant Sevilla's attorneys in obtaining a recovery, and therefore the 'fund doctrine' bars all or part of the recovery sought in this action."

In their class action counterclaim, defendants named Health Cost Controls of Illinois, Inc., and Health Cost Controls of America, Inc. (hereinafter collectively referred to as HCC). Defendants alleged in pertinent part that, under the common fund doctrine, HCC and CNA are obligated to bear the fees and expenses Sevilla's attorney incurred in obtaining the subject recovery from the tortfeasor. HCC and CNA refused to acknowledge this obligation. Defendants further alleged that HCC still possessed the check for $2,483.71 and refused to afford Sevilla a credit of one-third ($817.90) for the attorney fees incurred by Sevilla. The common issue of law advanced in the class action

counterclaim was the applicability of the fund doctrine to subrogation recoveries.

Sometime in 1995, HCC unsuccessfully attempted to remove its complaint to the federal district court claiming that defendants' counterclaim raised federal questions under the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq.* (West 1994)). In response, defendants apparently filed a motion in the federal court to remand the action to state court and the federal court granted the motion to remand on October 13, 1995.

No activity by any party is apparent in the record from the date of remand (October 1995) until defendants attempted to initiate discovery in February 1997 by serving HCC with a set of interrogatories and request to produce documents. In response, on March 11, 1997, HCC filed a motion for protective order staying all discovery until the resolution of its motion to dismiss for lack of subject matter jurisdiction, *i.e.*, a motion that HCC intended to file contemporaneously with the motion for a protective order but, in fact, did not file until November 13, 1997. During the interim, on March 14, 1997, defendants filed two motions, *i.e.*, a motion for class certification and a motion for summary judgment. The trial court ruled that all discovery be held in abeyance until these three motions were resolved, *i.e.*, motion to dismiss, motion for class certification and motion for summary judgment. Ultimately, however, the trial court ruled only upon HCC's motion to dismiss.

On April 3, 1998, the trial court granted HCC's motion to dismiss for lack of subject matter jurisdiction under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)) and dismissed all claims. Thereafter, the trial court denied defendants' motion for sanctions against HCC.

■ This court applies a *de novo* standard of review to the dismissal of a claim under section 2—619 because the resolution of such motion involves only a question of law. *E.g., Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1047 (1998).

On appeal, defendants primarily assert that the trial court erred, as a matter of law, in dismissing HCC's complaint based on lack of subject matter jurisdiction. Defendants maintain that ERISA is not an issue at all because the application of the common fund doctrine is a question of state, not federal, law. Thus, defendants submit that the circuit court had subject matter jurisdiction over HCC's complaint.

HCC contends that federal courts have exclusive subject matter jurisdiction over its complaint because its complaint is based on a reimbursement provision in an ERISA-governed benefit plan and, therefore, ERISA, a federal law, preempts state law. HCC maintains

that its decision to file its complaint in the circuit court was erroneous because it pleaded claims arising under ERISA.

■ Subject matter jurisdiction is the power of the court to hear and determine the general question involved and the power to grant the particular relief requested. *In re M.M.*, 156 Ill. 2d 53, 64 (1993); see also *In re Estate of Steinfeld*, 158 Ill. 2d 1, 12 (1994), citing *Faris v. Faris*, 35 Ill. 2d 305, 309 (1966); *Lescher v. Barker*, 57 Ill. App. 3d 776, 779 (1978) ("jurisdiction of the subject matter is the power of a particular court to hear the type of case that is then before it"). Subject matter jurisdiction "does not simply mean jurisdiction of the particular case before it, but the class of cases to which that case belongs." *Kemling v. Country Mutual Insurance Co.*, 107 Ill. App. 3d 516, 519-20 (1982).

■ Subject matter jurisdiction is conferred on courts by the constitution or by statute. *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d 138, 145 (1992). Our constitution provides that circuit courts have "original jurisdiction of all justiciable matters," with certain stated exceptions. Ill. Const. 1970, art. VI, § 9. A justiciable matter is one that involves the adverse legal interests of the parties. *Ligon v. Williams*, 264 Ill. App. 3d 701, 707 (1994).

■ The filing of a complaint or petition invokes the circuit court's authority to exercise its jurisdiction and resolve a justiciable question. *Rochon v. Rodriguez*, 293 Ill. App. 3d 952, 956 (1997); *City of Chicago v. Chicago Board of Education*, 277 Ill. App. 3d 250, 261 (1995). The complaint functions to frame the issues for the circuit court and to circumscribe the relief the court is empowered to order. *Rochon*, 293 Ill. App. 3d at 956.

■ Where " 'a complaint states a case belonging to a general class over which the authority of the court extends, the jurisdiction attaches.' " *People ex rel. Scott v. Janson*, 57 Ill. 2d 451, 459 (1974), quoting *Wood v. First National Bank*, 383 Ill. 515, 522 (1943). "The test of jurisdiction is to be found in the nature of the case and the relief which is sought." *Kemling*, 107 Ill. App. 3d at 520; see also *Janson*, 57 Ill. 2d at 460; *People ex rel. Person v. Miller*, 56 Ill. App. 3d 450, 457 (1977). Accordingly, whether a court has subject matter jurisdiction "must in the first instance be gathered from the averments of the pleading." *Private Tele-Communications, Inc. v. Illinois Bell Telephone Co.*, 31 Ill. App. 3d 887, 890 (1975).

In its complaint, HCC defined the nature of the case as the enforcement of its lien against defendants, which HCC asserted prior to the settlement of Sevilla's cause of action against the tortfeasors. HCC's complaint states:

"15. On or about September 3, 1992, HCC sent a *Notice of Lien* to Defendant Burnes, Sevilla's counsel.

16. Defendant Burnes had actual notice prior to the aforesaid settlement of the Plan's right to reimbursement and its *claim for lien against settlement* ***.

17. The insurance carrier for the tortfeasor has issued a check payable to Defendants Sevilla, and Burnes, and to Health Cost Controls as *lienholder* in the amount of $2,483.71, the amount of HCC's *claimed lien*.

18. HCC states that it holds said check in the amount of $2,483.71 in its possession and has requested Defendant Burnes and his client Sevilla to execute said check for purposes of the disbursement of funds to HCC in *satisfaction of its lien*.

19. Defendants Burnes and Sevilla have failed and refused to execute said check so that it may be negotiated for *satisfaction of HCC's lien*." (Emphasis added.)

In its complaint, HCC further sought relief in the form of a declaratory judgment and injunction:

"20. HCC brings this action and *seeks a determination* that it is entitled to an amount no less than $2,483.71 ***.
***

22. Unless Defendants' [*sic*] Burnes and Sevilla are *enjoined* from continuing to refuse to execute said check, the Plan will continue to suffer irreparable damage for which there is no adequate remedy at law." (Emphasis added.)

In its prayer for relief, HCC asked the court to find that HCC "is entitled to receive" and "to a judgment" in the amount of $2,483.71, and that defendants "be enjoined from refusing to execute said check."

■ By its own averments in its complaint, HCC sought to enforce its lien, secure a declaration as to its entitlement to proceeds in satisfaction of its lien, and obtain injunctive relief against defendants. Furthermore, in its appellate brief, HCC correctly acknowledges that its complaint did not "cast to allege claims under ERISA." We find HCC's attempt to recast its cause of action unavailing.

Most certainly, the circuit court has subject matter jurisdiction over the genera of cases that, like the present complaint, seek enforcement of an asserted lien by an insurer (see, *e.g., Jorgensen v. Whiteside*, 263 Ill. App. 3d 998 (1994)), a declaratory judgment (735 ILCS 5/2—701 (West 1994)) and injunctive relief (735 ILCS 5/11—101 *et seq.* (West 1994)). Accordingly, we hold that our state court had subject matter jurisdiction over HCC's complaint and reverse the trial court's order dismissing the complaint.

Regarding their class action counterclaim, defendants assert that the court's subject matter jurisdiction over the counterclaim would not necessarily be defeated even if HCC's complaint were dismissed for want of jurisdiction. HCC, on the other hand, contends that if a

court lacks subject matter jurisdiction over a complaint, then all subsequently filed pleadings are rendered void. Thus, HCC argues, defendants' counterclaim must be dismissed because it was filed after the complaint. In its April 3, 1998, order, the circuit court granted HCC's motion to dismiss "all pending claims and proceedings in this case for lack of subject matter jurisdiction ***. All pending proceedings in this case before this Court are dismissed."

■ A counterclaim is an independent cause of action, separate from a complaint, and it must stand or fall on its own merits, regardless of the disposition of the complaint. As stated by the Illinois Supreme Court in 1949:

"The general purpose of a counterclaim has been long understood and many times defined. It differs from an answer in that a counterclaim must be a cause of action, and it seeks affirmative relief while a defense merely defeats the plaintiff's cause of action by a denial or confession and avoidance. [Citations.] A counterclaim is an independent cause of action." *Wilson v. Tromly*, 404 Ill. 307, 309-10 (1949).

See also *Norman A. Koglin Associates v. Valenz Oro, Inc.*, 176 Ill. 2d 385, 393 (1997) ("a counterclaim differs from an answer or affirmative defense").

Just like a complaint is a particular cause of action, so also a counterclaim constitutes a separate, independent cause of action. See *Johnson v. Moon*, 3 Ill. 2d 561, 570 (1954) ("[i]f the cause of action asserted in the counterclaim had been advanced by a complaint in an independent action, proper judicial administration would require that the two cases be consolidated for trial"); *Bernstein v. Lind-Waldock & Co.*, 153 Ill. App. 3d 108 (1987) (a counterclaim is an independent cause of action and must be complete by itself).

Furthermore, "where a counterclaim sets up new facts and prays for affirmative relief and shows grounds by which the jurisdiction of the court may be upheld independently of the original complaint, dismissal of the complaint does not dispose of the counterclaim." *Wilson-Jump Co. v. McCarthy-Hundrieser & Associates*, 85 Ill. App. 3d 179, 184 (1980); *Fisher v. Holt*, 52 Ill. App. 3d 164, 166 (1977); see also *Citicorp Savings v. Rucker*, 295 Ill. App. 3d 801, 806 (1998) ("a counterclaim is not a defense on the merits, but is an independent cause of action in favor of the defendant against plaintiff, which seeks affirmative relief"); 735 ILCS 5/2—608 (West 1994) (the statute that governs counterclaims). Like any other cause of action, however, a counterclaim is subject to a motion to dismiss. See *Countiss v. Whiting*, 306 Ill. App. 548, 29 N.E.2d 277 (1940) (dismissal of a counterclaim was proper).

The counterclaim at issue expressly asserted a claim based on the application of the common fund doctrine to the amount of HCC's recovery. Defendants stated their claim as follows:

"30. Under the 'fund doctrine' CNA and HCC are obligated to bear the fees and expenses of Sevilla's and class members' attorneys incurred in obtaining the subject recovery.

31. CNA and HCC refuse to acknowledge this obligation.

32. Under the 'fund doctrine' the reimbursement, if any, due HCC and CNA from the recovery obtained by Sevilla's attorneys would be reduced by ⅓, and by the same or a similar amount for the other class members.

33. An actual controversy exists regarding the application of the 'fund doctrine' to the recoveries obtained by Sevilla and other class members, making declaratory relief under 735 ILCS 5/2—701 appropriate."

■ Our state court indisputably has subject matter jurisdiction over common fund claims. *Scholtens v. Schneider*, 173 Ill. 2d 375, 384-85 (1996) (the common fund doctrine has been recognized and applied in the United States Supreme Court, the lower federal courts, and in the courts of virtually every state in the Union, including Illinois); *LeFevre, Zeman, Oldfield & Schwarm Law Group, Ltd. v. Wal-Mart Stores, Inc.*, 302 Ill. App. 3d 1059 (1999) (the court analogized to the common-fund-doctrine cases and held that ERISA did not preempt the Illinois Attorneys Lien Act (770 ILCS 5/1 (West 1994)); *In re Estate of Pfoertner*, 298 Ill. App. 3d 1134 (1998) (the common fund doctrine applied to compensate an attorney who contested a will on behalf of several disinherited heirs); *Share Health Plan of Illinois, Inc. v. Alderson*, 285 Ill. App. 3d 489 (1996) (the reimbursement owed to a health maintenance organization by a beneficiary from a settlement was properly reduced in accordance with the common fund doctrine); *Jorgensen*, 263 Ill. App. 3d at 1002 (the amount of recovery on an insurer's lien must be reduced by the insurer's "proportionate share of attorney fees and costs incurred in the prosecution of plaintiff's action"), citing *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119 (1977); *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997) (the federal court does not have subject matter jurisdiction over the application of Illinois' common fund doctrine); *Health Cost Controls v. Bichanich*, 968 F. Supp. 396, 400 (N.D. Ill. 1997) (after ruling that the ERISA health plan was entitled to recover the undisputed amount of money it had paid for the plaintiff's medical benefits, the federal district court held that the common fund doctrine "claim arises solely from state law and *** it should be resolved by an Illinois State court").

■ Furthermore, the issue of ERISA preemption of our state common fund doctrine specifically was considered and rejected by the Illinois Supreme Court in *Scholtens* and by the Seventh Circuit Court of Appeals in *Blackburn*. In *Scholtens*, our supreme court held that the common fund "doctrine is outside the scope of ERISA's preemption provision (29 U.S.C. § 1144(a) (1982))." *Scholtens*, 173 Ill. 2d at 397. In holding that ERISA does not preempt the common fund doctrine, our supreme court found that "[t]he purpose of ERISA is to protect employees, not to provide loopholes through which ERISA plans can avoid paying their debts." *Scholtens*, 173 Ill. 2d at 396. In *Blackburn*, the Seventh Circuit of the Court of Appeals stated expressly that it agreed with the *Scholtens* decision. *Blackburn*, 115 F.3d at 495. The seventh circuit reasoned that "Illinois's common-fund doctrine, like its parallel in federal law [citations] is not about employee benefit plans. The common-fund doctrine long predates not only ERISA but also employer-sponsored health plans." *Blackburn*, 115 F.3d at 495. Additionally, the Federal District Court of the Northern District of Illinois held that a common fund doctrine "claim arises solely from state law and is not preempted by ERISA." *Bichanich*, 968 F. Supp. at 400.

Based on the claim asserted in defendants' counterclaim and the state court's jurisdiction over common fund claims, we find that the trial court had subject matter jurisdiction over defendants' class action counterclaim. Accordingly, we reverse the dismissal of defendants' counterclaim.

■ Finally, we reject defendants' assertion that sanctions should have been imposed against HCC. The trial court declined to impose to such sanctions and our review of a trial court's decision regarding sanctions is reviewed under an abuse of discretion standard. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998) (whether to impose sanctions is committed to the sound discretion of the trial court). "A circuit court exceeds its discretion only where no reasonable person would take the view adopted by it." *Spiegel v. Hollywood Towers Condominium Ass'n*, 283 Ill. App. 3d 992, 1001 (1996); *Pritzker v. Drake Tower Apartments, Inc.*, 283 Ill. App. 3d 587, 591 (1996) (the trial court did not abuse its discretion in denying sanctions for the act of filing a time-barred claim). The trial court had an opportunity to examine the same arguments and information presented on appeal and declined to impose sanctions. We have carefully examined the record and cannot say that no reasonable person would take the view adopted by the trial court. Accordingly, we affirm the trial court's decision to deny defendants' motion for sanctions.

In light of our holdings that the trial court had subject matter ju-

risdiction over both HCC's complaint and defendants' counterclaim, the remaining issues raised by defendants are moot.

Affirmed in part; reversed in part and remanded.

HOURIHANE, P.J., and THEIS, J., concur.