ADOLF LO, Plaintiff-Appellant, v. PROVENA COVENANT MEDICAL CENTER, Defendant-Appellee.

Fourth District    No. 4—04—0362

Argued February 23, 2005.—Opinion filed March 28, 2005.—Rehearing denied May 4, 2005.

Michael W. Rathsack (argued), of Chicago, and Thomas J. Pliura, of Le-Roy, for appellant.

Nancy G. Lischer (argued), Peter G. Panno, and Daniel P. Slayden, all of Hinshaw & Culbertson, L.L.P., of Chicago, for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiff, Adolf Lo, M.D., sued defendant, Provena Covenant Medical Center, for breach of contract. He alleged defendant had violated the medical-staff bylaws (bylaws) by restricting his clinical privileges without granting him a hearing.

Soon after the filing of the complaint, defendant took a more severe corrective action, summarily suspending plaintiff's clinical privilege to perform open-heart surgery. Plaintiff moved for an order temporarily restraining defendant from enforcing the suspension. The trial court granted the motion, defendant appealed, and we reversed the temporary restraining order. *Lo v. Provena Covenant Medical Center*, 342 Ill. App. 3d 975, 796 N.E.2d 607 (2003), *appeal denied*, 207 Ill. 2d 605, 807 N.E.2d 976 (2004).

On remand, defendant filed a motion to dismiss the complaint

with prejudice pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)). Defendant relied on two affirmative grounds for dismissal: (1) its immunity under section 10.2 of the Hospital Licensing Act (Act) (210 ILCS 85/10.2 (West 2002)) and (2) our previous decision in this case. The trial court granted the motion, and plaintiff appeals.

The complaint seeks two kinds of relief: an injunction and damages. The prayer for an injunction is moot, and section 10.2 of the Act bars an award of damages. Therefore, we affirm the judgment.

## I. BACKGROUND

In his complaint, which he filed on December 3, 2002, plaintiff alleges he is a licensed physician specializing in cardiovascular surgery. For many years, he has had the clinical privilege to perform cardiovascular surgery at defendant's hospital and its predecessor institutions. On or around September 25, 2002, defendant allegedly violated the bylaws by "reduc[ing] and restrict[ing] [plaintiff's] medical[-]staff privileges without granting him the right to a hearing." Defendant thereby damaged him financially and harmed his medical practice and professional reputation. In conjunction with his prayer for damages, he demanded a trial by jury. He also prayed for an order "immediately enjoining [d]efendant *** from continuing to reduce and restrict [his] privileges in violation of the [b]ylaws."

On February 17, 2003, plaintiff filed a motion for a temporary restraining order and preliminary injunction. See 735 ILCS 5/11—101 (West 2002). In his motion, he alleged that on February 15, 2003, defendant summarily suspended his clinical privilege to perform open-heart surgery. He attached to his motion a letter he had received from defendant's chief executive officer and president. The letter said the suspension was due to "significant quality concerns *** as reflected in the November 27, 2001, external [cardiovascular] peer review." Plaintiff argued that because neither the chair of a department, the president of the medical staff, nor an officer of the medical staff had recommended the summary suspension, defendant lacked the power to impose it under the bylaws. The trial court agreed with plaintiff and entered an order temporarily restraining defendant from suspending his clinical privileges "until such time as [defendant] compli[ed] with [the bylaws]."

We reversed the temporary restraining order, holding that because an independent peer review had raised concerns about the quality of plaintiff's cardiovascular services and the medical staff had failed or refused to make a recommendation one way or the other, defendant's board of directors, the entity ultimately responsible for the quality of

care, had the inherent authority to summarily suspend plaintiff's clinical privilege in order to prevent an imminent danger to patients. *Lo*, 342 Ill. App. 3d at 985, 796 N.E.2d at 615.

On October 22, 2003, on remand, defendant filed its motion to dismiss the complaint with prejudice pursuant to section 2—619(a)(9). Defendant asserted two grounds for dismissal: (1) its immunity under section 10.2 of the Act (210 ILCS 85/10.2 (West 2002)) and (2) our statement in *Lo*, 342 Ill. App. 3d at 987, 796 N.E.2d at 617, that the summary suspension had violated no bylaw. The trial court granted the motion.

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

A motion to dismiss under section 2—619(a)(9) raises "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2002). Rather than negate the essential facts of the cause of action, a section 2—619 motion admits those facts, and we take them to be true along with any reasonable inferences one could draw in the plaintiff's favor. *In re Estate of Krevchena*, 244 Ill. App. 3d 160, 164, 614 N.E.2d 74, 77 (1993). Thus, we accept as true the factual allegation that defendant restricted plaintiff's clinical privileges without granting him a hearing. A section 2—619 motion also admits the legal sufficiency of the complaint. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115, 619 N.E.2d 732, 735 (1993). Applying a *de novo* standard of review, we ask a question designed to give the plaintiff the benefit of the doubt: is it clear that the affirmative matters bar any possible recovery premised on the admitted facts of the complaint? *Thornton v. Shah*, 333 Ill. App. 3d 1011, 1018-19, 777 N.E.2d 396, 403 (2002).

### B. Request for an Injunction

Defendant argues this appeal is moot. We have subject-matter jurisdiction over this appeal only if an actual, live controversy still exists between the parties, as opposed to an abstract or hypothetical controversy that the parties are no longer in a position to care about. See *In re Andrea F.*, 208 Ill. 2d 148, 156, 802 N.E.2d 782, 787 (2003); *In re A Minor*, 127 Ill. 2d 247, 255, 537 N.E.2d 292, 295 (1989). An appeal is moot if an intervening event has made it impossible for us to grant effectual relief. *A Minor*, 127 Ill. 2d at 255, 537 N.E.2d at 295.

According to defendant, three events have made this appeal moot. The first event was plaintiff's alleged agreement to the restrictions of which he complains. Defendant confuses the merits of a case with the

situation in which a case becomes moot. Plaintiff alleges in his complaint that on or around September 25, 2002, defendant involuntarily restricted his clinical privileges. Defendant denies doing so and insists that plaintiff agreed to the restrictions as an alternative to defendant's imposing them involuntarily (with a resulting report to the National Practitioner Data Bank (see 42 U.S.C. § 11133(a)(1)(A) (2000))). That sounds to us like an actual controversy. Instead of pointing to an *intervening* event (see *In re Marriage of Deem*, 328 Ill. App. 3d 453, 455, 766 N.E.2d 661, 662 (2002)), defendant points to evidence that, in defendant's view, rebuts an essential fact in the complaint. Evidence favoring one side of a controversy and disfavoring the other does not negate the existence of the controversy. If the claim turns out to be untrue, the proper disposition will be not to dismiss the claim as moot but to enter a judgment on the merits in defendant's favor.

The other two events, by contrast, are intervening and factually undisputed. In February 2003, defendant summarily suspended plaintiff's privilege to perform open-heart surgery. Also, in January 2004, after the (suspended) privilege expired, plaintiff applied for its renewal, and defendant denied the application. The bylaws required plaintiff to request a hearing before the hearing committee within 30 days after receiving notification of any adverse decision on his clinical privileges. Because plaintiff missed the deadlines for requesting hearings on the summary suspension and the nonrenewal, defendant argues he has "waived" his right to a hearing on either decision. "There is no point in litigating whether plaintiff should have a supervising cardiac surgeon," defendant argues (supervision of his surgeries was one of the restrictions), "because there will be no surgery to supervise."

Plaintiff argues the 30-day period for requesting a hearing never started running with respect to either the summary suspension or the nonrenewal because each time defendant made an adverse decision regarding his clinical privileges, the bylaws required the chief executive officer to serve a notice upon him by certified mail. The bylaws also prescribed the contents of the notice. After the summary suspension and also after the nonrenewal, defendant either failed to serve a notice upon him by certified mail or the notice lacked all the prescribed contents. Plaintiff argues that until defendant complies with the procedural requirements of the bylaws with respect to notice, the 30-day clock for requesting a hearing does not begin to run.

Putting the summary suspension and the nonrenewal in brackets, in a purely theoretical way, really does not address defendant's argument. A court cannot sensibly order defendant to lift the restrictions from a clinical privilege that no longer exists. If, because of a nonre-

newal that plaintiff does not challenge in this lawsuit, the privilege to perform cardiovascular surgery has vanished altogether, so have the restrictions of that privilege. "A case on appeal [becomes] moot where 'the issues involved in the trial court no longer exist' ***." *A Minor*, 127 Ill. 2d at 255, 537 N.E.2d at 295, quoting *La Salle National Bank v. City of Chicago*, 3 Ill. 2d 375, 378-79, 121 N.E.2d 486, 488 (1954). The complaint frames the issues for the court and circumscribes the relief it can award (*Health Cost Controls v. Sevilla*, 307 Ill. App. 3d 582, 587, 718 N.E.2d 558, 562 (1999)). In his complaint, plaintiff challenges only the restrictions of September 2002, not the summary suspension of February 2003 or the nonrenewal of January 2004. The complaint requests an order "enjoining *** [defendant] from continuing to reduce and restrict [plaintiff's] privileges." One must understand that prayer, however, in the context of the complaint: as referring only to the September 2002 restrictions, not the summary suspension or the nonrenewal, neither of which the complaint mentions. In the present posture of the pleadings, the prayer for an injunction is moot.

## C. Request for Damages

According to defendant, an injunction is the only permissible remedy for plaintiff's cause of action, and because the prayer for an injunction is moot, the case is moot in its entirety. Defendant denies that the bylaws created a contract between defendant and plaintiff and, therefore, denies the right to damages for any violation of the bylaws. We hold that the bylaws did indeed create a contract between plaintiff and defendant.

Although defendant admits that procedures in bylaws are enforceable by injunction, defendant does not explain under what legal theory one could enforce them if not under a theory of contract. The rule of limited judicial review, whereby we review the reductions of clinical privileges only for procedural compliance with the bylaws (*Knapp v. Palos Community Hospital*, 176 Ill. App. 3d 1012, 1018-19, 531 N.E.2d 989, 993 (1988)), presupposes that the bylaws are enforceable under some recognized theory of the common law. We have held that the constitution or bylaws of a voluntary association, such as a trade union, create a contract between the association and its members. *Gratz v. Cozart*, 13 Ill. App. 2d 515, 517, 142 N.E.2d 833, 834 (1957). Whether bylaws are a contract does not appear to depend on the type of voluntary association that issued them. See *State of North Dakota ex rel. Langer v. North Central Ass'n of Colleges & Secondary Schools*, 23 F. Supp. 694, 699 (E.D. Ill. 1938) ("churches, lodges[,] and all other like voluntary associations"); see also *Gratz*, 13 Ill. App. 2d at 517,

142 N.E.2d at 834. Like a trade union, a medical staff is a voluntary association, "[a]n unincorporated business organization that is not a legal entity separate from the persons who compose it" (Black's Law Dictionary 119 (7th ed. 1999)). *Head v. Lutheran General Hospital*, 163 Ill. App. 3d 682, 693, 516 N.E.2d 921, 928 (1987). The First District has held that the bylaws of a medical staff "form part of the contract between the association and its members." *Head*, 163 Ill. App. 3d at 691, 516 N.E.2d at 927.

The bylaws in this case are entitled the "Medical[-]Staff Bylaws." Plaintiff does not sue the medical staff; he sues defendant. See *Head*, 163 Ill. App. 3d at 693, 516 N.E.2d at 928 ("Defendant [hospital] is a private institution, and its medical staff is a voluntary association"). Considering that bylaws are a contract between the voluntary association (in this case, the medical staff) and its individual members (*Head*, 163 Ill. App. 3d at 691, 516 N.E.2d at 927), how does plaintiff have a cause of action against *defendant* (the hospital) for breach of contract? Through its board of directors, defendant formally adopted the bylaws in October 1996, the same time the medical staff adopted them. Section 18.2 of the bylaws provides they "are legally binding upon the [m]edical [c]enter." If, as case law holds, the bylaws are a contract between plaintiff and the medical staff (see *Head*, 163 Ill. App. 3d at 691, 516 N.E.2d at 927), defendant's approval of the bylaws cannot transform them into something other than a contract. By approving the bylaws, defendant became a party to the contract.

If defendant had promised procedures that the law already required, and nothing more, then, arguably, the preexisting-duty rule would prevent the formation of a contract between defendant and the medical staff. See *White v. Village of Homewood*, 256 Ill. App. 3d 354, 357, 628 N.E.2d 616, 618 (1993); *Virmani v. Presbyterian Health Services Corp.*, 127 N.C. App. 71, 76, 488 S.E.2d 284, 287-88 (1997). No law required defendant, however, to grant plaintiff the privilege to practice medicine in its hospital. Nor did any law require plaintiff to practice there. Each party conferred a benefit on the other, and their mutual benefit is consideration. See *Virmani*, 127 N.C. App. at 76-77, 488 S.E.2d at 288. Defendant and the association of which plaintiff is a member agreed that certain disciplinary procedures, many of them mandated by law (210 ILCS 85/10.4(b)(2) (West 2002); 77 Ill. Adm. Code § 250.310(c)(2) (Conway Greene CD-ROM January 2002)), would govern plaintiff's employment. Plaintiff seeks to enforce a procedure that defendant promised. See *Maimon v. Sisters of the Third Order of St. Francis*, 120 Ill. App. 3d 1090, 1094, 458 N.E.2d 1317, 1319 (1983).

"The principal legal remedy to enforce a promise is a judgment awarding a sum of money." E. Farnsworth, Farnsworth on Contracts

§ 12.2, at 156 (3d ed. 2004). Defendant invokes the immunity to damages in section 10.2.

In reliance on *Szczerbaniuk v. Memorial Hospital for McHenry County*, 180 Ill. App. 3d 706, 536 N.E.2d 138 (1989), plaintiff argues the immunity in section 10.2 is inapplicable because defendant's chief executive officer, who "addressed" the restrictions, was "not a protected committee." In *Szczerbaniuk*, 180 Ill. App. 3d at 708-09, 536 N.E.2d at 140, a hospital's chief executive officer terminated the plaintiff's radiology service agreement on the ground that he had sexually harassed hospital employees. It was unclear whether the hospital's executive committee had authorized this disciplinary action. *Szczerbaniuk*, 180 Ill. App. 3d at 709, 536 N.E.2d at 140. The Second District stated: "Insofar as section 10.2 clearly contemplates action by committees, we are hesitant to apply it to immunize conduct of an individual acting only pursuant to an informal delegation of authority by an uninformed committee." *Szczerbaniuk*, 180 Ill. App. 3d at 710-11, 536 N.E.2d at 141. *Szczerbaniuk* is distinguishable because after its issuance, the General Assembly amended section 10.2 by adding the words "or individual," thereby extending the immunity to acts or omissions of any individual who has the purpose of internal quality control (Pub. Act 91—448, § 5, eff. July 1, 1999 (1999 Ill. Laws 5402, 5402))—a purpose the chief executive officer in this case apparently had, to judge from the correspondence that both parties cite.

Section 10.2 now provides:

> "[N]o hospital *** shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct, except those involving wilful or wanton misconduct, of *** any *** committee *or individual* whose purpose, directly or indirectly, is internal quality control ***, or for the purpose of professional discipline ***. *** For the purposes of this [s]ection, 'wilful and wanton misconduct' means a course of action that shows actual or deliberate intention to harm or that, if not intentional, shows an utter indifference to or conscious disregard for a person's own safety and the safety of others." (Emphasis added.) 210 ILCS 85/10.2 (West 2002).

If we were applying the ordinary definition of "wilful and wanton misconduct"—*i.e.*, great carelessness or gross negligence—it would be a question of fact whether defendant's alleged conduct met that definition. Plaintiff alleges that defendant involuntarily restricted his clinical privileges without giving him a chance to be heard, thereby violating not only the bylaws but also statutory law (see 210 ILCS 85/10.4(b)(2)(C) (West 2002)). Considering the grave implications that involuntary restrictions could have for plaintiff's career, a jury could, at a minimum, find such an omission to be careless. "Under the facts

of [a] case, willful and wanton misconduct may be only degrees more than ordinary negligence \*\*\*." *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 275, 641 N.E.2d 402, 406 (1994). Locating the "thin line" between carelessness and great carelessness (*Ziarko*, 161 Ill. 2d at 275, 641 N.E.2d at 406) would be a job for the trier of fact. *Doe v. Calumet City*, 161 Ill. 2d 374, 390, 641 N.E.2d 498, 506 (1994).

In this case, however, we are dealing not with the ordinary meaning of "wilful and wanton misconduct" but with a statutory definition. "In construing statutes the ordinary, usual[,] and commonly accepted definitions of the words employed therein are to be taken as the correct definitions of such words, *unless the statute gives special definitions to the contrary* \*\*\*." (Emphasis added.) *Wahlman v. C. Becker Milling Co.*, 279 Ill. 612, 622, 117 N.E. 140, 144 (1917). Plaintiff has alleged no facts, and has offered no evidence, from which we could reasonably infer that defendant "actual[ly] or deliberate[ly] inten[ded] to harm" him. 210 ILCS 85/10.2 (West 2002). His "own safety" was never at issue in this case. See 210 ILCS 85/10.2 (West 2002). Because plaintiff's cause of action does not fit within the specialized definition of "wilful and wanton misconduct" in section 10.2, the statute bars him from recovering damages for defendant's breach of contract.

A court has discretion to order the specific performance of a contract if "perfect justice cannot be done at law." *Dixon v. City of Monticello*, 223 Ill. App. 3d 549, 561, 585 N.E.2d 609, 618 (1991). If, as it appears, section 10.2 immunizes defendant from damages for breaching its contract with plaintiff, perfect justice cannot be done at law, and a court should at least be able to order defendant to perform the contract. As we have held, however, the prayer for an injunction is moot.

## III. CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

TURNER and STEIGMANN, JJ., concur.