Filed 11/21/08     NO. 4-08-0149

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| L. ROYCE LARSEN, M.D., | ) | Appeal from |
|       Plaintiff-Appellant, | ) | Circuit Court of |
|       v. | ) | Vermilion County |
| THE CARLE FOUNDATION, d/b/a CARLE | ) | No. 06L1 |
| FOUNDATION HOSPITAL, THE CARLE | ) | |
| SURGICENTER-DANVILLE, and THE CARLE | ) | Honorable |
| SURGICENTER-CHAMPAIGN, | ) | Claudia S. Anderson, |
|       Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

In June 2007, plaintiff, L. Royce Larsen, M.D., filed a second-amended complaint alleging breach of contract against defendants, Carle Foundation, d/b/a Carle Foundation Hospital, Carle Surgicenter-Danville, and Carle Surgicenter-Champaign.  In January 2008, plaintiff filed a motion for partial summary judgment, which the trial court denied.  At trial, the court granted defendants' motion for a "directed verdict," more properly denominated a directed judgment.

On appeal, plaintiff argues the trial court erred in (1) denying his motion for partial summary judgment, (2) granting defendants' motion for directed judgment, and (3) ignoring his right to a fair hearing.  We affirm.

I. BACKGROUND

Plaintiff is a physician specializing in general surgery.  Prior to December 2005, plaintiff was a member in good

standing of defendants' staff and had privileges at the hospital and surgicenters. Medical staff privileges were subject to renewal every two years. A physician seeking to continue his privileges was required to submit a renewal application. Plaintiff's privileges were due to expire on December 3, 2005.

In June 2007, plaintiff filed a second-amended complaint against defendants, alleging, inter alia, breach of contract. Plaintiff claimed he made a timely application for reappointment to the medical staff and clinical privileges and supplied all necessary information. He also claimed defendants sent a letter to him on or about November 22, 2005, requesting additional information be submitted by November 28, 2005. Plaintiff alleged defendants' demand was unauthorized by the Carle Foundation Hospital medical staff bylaws, rules, and regulations (bylaws). Plaintiff claimed he supplied the requested information, albeit after the stated deadline. Plaintiff stated his application for reappointment was denied as incomplete on December 1, 2005, and thus his medical staff membership and clinical privileges expired without renewal on December 3, 2005. Since then, plaintiff has been unable to practice medicine and surgery at defendants' facilities. Plaintiff claimed defendants' refusal to renew his privileges constituted an "adverse action," of which he received no formal notice, and defendants failed or refused to afford him a fair hearing as provided by the bylaws.

- 2 -

In his breach-of-contract claim, plaintiff alleged defendants' action in requiring additional information and denying his application for renewal was a direct and material breach of the terms and conditions of the bylaws and the Hospital Licensing Act (Act) (210 ILCS 85/1 through 16 (West 2006)). Further, plaintiff alleged defendants denied him a fair hearing and other appeal rights. Plaintiff claimed he had suffered damages as a direct and proximate result of defendants' breach of contract.

In January 2008, plaintiff filed a motion for partial summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2006)), stating there remained only an issue of law as to whether defendants' actions constituted a breach of contract and violation of state law. Plaintiff claimed the bylaws and the Act conferred upon defendants an obligation to afford plaintiff a fair hearing when it failed to grant him a renewal of the staff membership and clinical privileges. The trial court denied the motion.

At the bench trial, G. Lynn Palmer testified she worked for Carle Clinic and managed plaintiff's office. She had worked for plaintiff for over 17 years and assisted him in filling out the biennial renewal application. She stated the office received plaintiff's renewal application form and a letter from Carle Foundation Hospital dated August 1, 2005. She set the form aside

- 3 -

and noted it would normally take her five or six weeks to complete the application. The letter indicated the application was to be returned by August 23, 2005. Palmer did not return the application by that date, but she considered it a request and not a deadline. Although Palmer testified she did not see a memo from the medical staff coordinator that the application had not been received and needed to be submitted by October 3, 2005, to meet the deadlines of the application process, Palmer stated she complied with that deadline.

On November 22, 2005, plaintiff received a letter indicating his application for reappointment to the medical staff and clinical privileges had been reviewed by the credentials committee on November 17, 2005. The letter stated the committee sought additional information from three facilities at which he performed surgical cases and asked that the information be provided no later than November 28, 2005. Palmer testified she typed the letters to get the needed information on November 28.

Plaintiff testified his formal employer is Carle Clinic and he had been working with the clinic for 20 years. He never practiced at Carle Foundation Hospital in Urbana. Plaintiff stated that as a surgeon with staff privileges he is required to renew his privileges through an application process. Plaintiff testified he signed his application on August 25, 2005. He signed it again when the application was ready to be forwarded on

September 28, 2005. He received a letter from Dr. Napoleon Knight, the vice president of medical affairs for Carle Foundation Hospital, on November 22, 2005, requesting additional information by November 28. Plaintiff responded by letter on November 28, 2005, noting the difficulty in supplying the requested information given the Thanksgiving holiday (Thursday, November 24, 2005). Plaintiff also sent letters to various health-care facilities to comply with Knight's request. Plaintiff testified to letters sent by various facilities in response to his request for information.

On December 1, 2005, plaintiff received a letter from Dr. Knight, informing him the requested information had not been received by November 28, 2005, and thus plaintiff's privileges would expire on December 3, 2005. The letter indicated plaintiff would have to make arrangements to reschedule any procedures at another facility at which he had privileges. Plaintiff testified he sought a fair hearing in regard to the denial of his staff privileges but he did not receive one.

Following the close of plaintiff's evidence, defense counsel moved for directed judgment. The trial court found plaintiff's evidence failed to establish a prima facie case. The court dismissed the second-amended complaint. This appeal followed.

## II. ANALYSIS

A. Summary Judgment

Plaintiff argues the trial court erred in denying his motion for partial summary judgment. "In general, when a motion for summary judgment is denied and the case proceeds to trial, the order denying the motion for summary judgment merges with the judgment entered and is not appealable." Labate v. Data Forms, Inc., 288 Ill. App. 3d 738, 740, 682 N.E.2d 91, 92 (1997).

In the case sub judice, plaintiff filed a motion for partial summary judgment, claiming there were no genuine issues of material fact as to the actions of the parties. Plaintiff argued only questions of law remained as to whether defendants' actions constituted a breach of contract and violation of state law. The trial court denied the motion and conducted a bench trial on plaintiff's second-amended complaint. Thus, plaintiff's motion for partial summary judgment merges with the January 2008 directed finding. Accordingly, we will not address plaintiff's argument on this issue.

B. Directed Judgment

Plaintiff argues the trial court erred in granting defendants' motion for directed judgment at the close of plaintiff's evidence. We disagree.

Section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2006)) provides that "[i]n all cases tried without a jury, defendant may, at the close of plaintiff's case, move for

- 6 -

a finding or judgment in his or her favor."

"In ruling on this motion, a court must engage in a two-prong analysis. [Citation.] First, the court must determine, as a matter of law, whether the plaintiff has presented a prima facie case. A plaintiff establishes a prima facie case by proffering at least 'some evidence on every element essential to [the plaintiff's underlying] cause of action.' [Citation.] If the plaintiff has failed to meet this burden, the court should grant the motion and enter judgment in the defendant's favor. [Citation.] Because a determination that a plaintiff has failed to present a prima facie case is a question of law, the circuit court's ruling is reviewed de novo on appeal. [Citations.]

If, however, the circuit court determines that the plaintiff has presented a prima facie case, the court then moves to the second prong of the inquiry. In its role as the finder of fact, the court must consider the totality of the evidence presented, including any evidence which is favorable to

the defendant.  \*\*\*  After weighing the quality of all of the evidence, both that presented by the plaintiff and that presented by the defendant, the court should determine, applying the standard of proof required for the underlying cause, whether sufficient evidence remains to establish the plaintiff's prima facie case.  If the circuit court finds that sufficient evidence has been presented to establish the plaintiff's prima facie case, the court should deny the defendant's motion and proceed with the trial.  [Citation.]  If, however, the court determines that the evidence warrants a finding in favor of the defendant, it should grant the defendant's motion and enter a judgment dismissing the action.  [Citation.]  A reviewing court will not reverse the circuit court's ruling on appeal unless it is contrary to the manifest weight of the evidence."  People ex rel. Sherman v. Cryns, 203 Ill. 2d 264, 275-76, 786 N.E.2d 139, 148-49 (2003).

In this case, defense counsel moved for a directed finding after the close of plaintiff's case.  The trial court

found plaintiff failed to present a <u>prima</u> <u>facie</u> case and dismissed the action. As this presents a question of law, we review the trial court's determination <u>de</u> <u>novo</u>.

"To succeed on a claim for breach of contract, a plaintiff must plead and prove the existence of a contract, the performance of its conditions by the plaintiff, a breach by the defendant, and damages as a result of the breach." <u>Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.</u>, 376 Ill. App. 3d 1006, 1014, 876 N.E.2d 218, 226 (2007). In this case, the trial court found the parties had a quasi-contract under the bylaws. See also <u>Lo v. Provena Covenant Medical Center</u>, 356 Ill. App. 3d 538, 542, 826 N.E.2d 592, 598 (2005) (finding the medical-staff bylaws created a contract between the doctor and the medical center). Plaintiff claims the trial court erred in finding he failed to perform certain conditions when he did not return the renewal application by the date set by defendants.

The only witnesses to testify at the bench trial were plaintiff and his office manager. Plaintiff did not call witnesses who could testify to the renewal application or credentialing process in a general sense or in reference to plaintiff's situation. Plaintiff's evidence indicated defendants sent the renewal application two months late, as the medical staff office was required to notify the applicant of when his privileges would expire six months prior to the expiration date. Here, plain-

tiff's privileges expired on December 3, 2005. Thus, defendants were required to notify him and send an application packet on or around June 3, 2005. Palmer stated she received plaintiff's renewal application form on or around August 1, 2005. Although the notification was late, plaintiff presented no evidence indicating he could then fill out and return the application at the time of his choosing. Instead, the bylaws plainly indicated an applicant must complete his reappointment application on time or risk an automatic denial and expiration of privileges at the end of the term.

The application letter indicated it must be returned by August 23, 2005. Plaintiff argues the hospital bylaws and policies did not allow for the unilateral imposition of "this arbitrary early return date." Plaintiff, however, presented no evidence indicating how the bylaws and policies impacted the timing of his return of the application. Moreover, it appears defendants informed plaintiff he could still submit his application for renewal by October 3, 2005, thereby allowing him more time. Without authority to support his position, plaintiff simply contends defendants could not impose a deadline, notwithstanding defendants' need to verify the application materials and make a decision on renewal prior to the expiration date.

Plaintiff indicated he signed the application on September 28, 2005, when it was ready to be forwarded. On

November 22, 2005, plaintiff received a letter from Dr. Knight requesting additional information by November 28. Plaintiff argues nothing in the bylaws or the Act granted defendants the authority to request additional information after the application had been deemed complete. However, plaintiff did not present evidence as to the stage of the application process at the time of the request for additional information, and plaintiff cannot now put forth evidence on appeal when he failed to do so at trial. Further, that a health-care entity might see the need to request additional information prior to renewing a staff member's credentials is a matter of common sense. See also 410 ILCS 517/15(i) (West 2006) (indicating nothing in the Health Care Professional Credentials Data Collection Act restricts a hospital from requesting "additional information necessary for credentialing or recredentialing"). Defendants' request for more information on surgical outcomes and any disciplinary proceedings against plaintiff can neither be viewed as out of the ordinary nor, without evidence to the contrary, as a "spurious" attempt by defendants to spite plaintiff or frustrate the renewal process.

Plaintiff also argues defendants acted in bad faith when they requested additional information the day before Thanksgiving. Plaintiff's argument of bad faith is pure speculation. Moreover, plaintiff received the request for additional information on November 22 with the information to be furnished by

November 28. Instead of giving immediate attention to the matter, plaintiff waited until November 28 to send out letters to the facilities. One of the facilities replied the same day, indicating a quick response was not impossible. Further, Dr. Knight's December 1 letter noted the medical executive committee gave plaintiff an extension of time until November 30, 2005, to provide the requested information, but plaintiff failed to do so by that time. Based on the foregoing, we find plaintiff's evidence failed to establish he performed the conditions under the bylaws to satisfy his claim for breach of contract.

### C. Fair Hearing

Plaintiff argues the trial court ignored his right to a fair hearing where his privileges were not renewed. Section 10.4(b)(2)(C) of the Act provides a medical staff member has the right "to request a fair hearing" as to an adverse decision before a hearing panel. 210 ILCS 85/10.4(b)(2)(C) (West 2006). An adverse decision is defined as "a decision reducing, restricting, suspending, revoking, denying, or not renewing medical staff membership or clinical privileges." 210 ILCS 85/10.4(b)(4) (West 2006).

In this case, plaintiff failed to present evidence that he supplied a completed application and the necessary information requested by defendants prior to the date his privileges expired. Further, plaintiff failed to present evidence that defendants

issued an adverse decision here.  Instead, the evidence indicated plaintiff's privileges simply expired because of his own doing. As defendants did not issue an adverse decision, plaintiff was not entitled to a hearing.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent.  I would reverse and remand for a new trial.

Granting a directed verdict in a jury trial is an extraordinary step.  A motion for directed verdict in a jury trial should only be granted when "all of the evidence, when viewed in its aspect most favorable to the opponent, so over-whelmingly favors [the] movant that no contrary verdict based on that evidence could ever stand."  Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967).  A court should be very reluctant to take a case away from a jury and substitute its own view of the facts.

In a bench trial, however, the court does not take the case away from the jury when it enters a directed judgment (735 ILCS 5/2-1110 (West 2006)).  The court is the trier of fact in a bench trial.  In a bench trial, a directed judgment at the close of all the evidence is no different from a decision on the evidence.  A court conducting a bench trial also has the power to enter a directed judgment in favor of the defendant at the close of the plaintiff's evidence.  735 ILCS 5/2-1110 (West 2006).  There are limitations, however, on that power.  As with jury cases, the essential question is whether the plaintiff has established a prima facie case, i.e., whether he has presented some evidence on every element essential to his cause of action.

- 14 -

If he has not, the trial court, in nonjury cases as in jury cases, may enter a directed judgment in the defendant's favor. Kokinis v. Kotrich, 81 Ill. 2d 151, 154-55, 407 N.E.2d 43, 45 (1980).

There is a further step in a nonjury case. In a bench trial, even if the plaintiff has presented some evidence on every element essential to his cause of action, the trial court may go on to weigh the plaintiff's evidence, including any evidence favorable to the defendant.

> "This weighing process may result in the negation of some of the evidence necessary to the plaintiff's prima facie case, in which event the court should grant the defendant's motion and enter judgment in his favor. On the other hand, if sufficient evidence necessary to establish the plaintiff's prima facie case remains following the weighing process, the court should deny the defendant's motion and proceed as if the motion had not been made." Kokinis, 81 Ill. 2d at 155, 407 N.E.2d at 45.

That weighing process, however, may not simply assume that the defendant would present evidence in his case that would negate the evidence presented by the plaintiff and the reasonable

inferences to be drawn therefrom.

Plaintiff established a <u>prima</u> <u>facie</u> case here.  He presented some evidence on every element essential to his cause of action.  Plaintiff presented evidence (1) there was a contract, (2) the practice under the contract was not to insist on strict compliance with date requirements, (3) he submitted his application within the time limits, (4) defendants asked for additional information and arbitrarily imposed a deadline not provided by the contract, (5) the information was eventually supplied, and (6) the procedure employed by defendants allowed defendants to terminate plaintiff's privileges by a technicality, thereby depriving plaintiff of the hearing to which he was entitled under the contract.  Defendants has presented no evidence to negate plaintiff's evidence.

The defense argument that some of the evidence establishing plaintiff's case has been negated incorrectly rests on evidence not presented, which the defense argues plaintiff should have presented:

> "The Plaintiff did not present any witness
> from the Medical Staff Office, the Credentials
> Committee[,] or anyone affiliated with Carle
> Foundation Hospital who was involved in the
> application process for medical staff member-
> ship and hospital privileges.  No evidence

was presented on how the renewal application would be processed or what was involved in any decision making, whether in general or specifically to these facts."

The argument that plaintiff must call defendants' witnesses (who will then be recalled by defendants) does not promote judicial economy. The fact that the whole story has not been told does not entitle defendant to a directed judgment. All plaintiff had to do was establish a prima facie case. The fact that additional evidence might eventually be presented does not prevent the establishment of a prima facie case. The majority asserts plaintiff's argument that defendants acted in bad faith when they requested additional information the day before Thanksgiving is "pure speculation." Slip op. at 11. Plaintiff, however, has presented circumstantial evidence suggesting bad faith. Defendants have not presented any witness who would deny that motive. The trial court should have heard all the evidence before making its ruling.