2023 IL App (1st) 220321-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
May 23, 2023

No. 1-22-0321

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| MEDICI GALLERY & COFFEEHOUSE, INC., | ) | |
| | ) | |
| Plaintiff and Counterdefendant-Appellant, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County |
| | ) | |
| PIONEER UC V, LLC, JAKAPAT, LLC, and A+, INC. d/b/a Noodles, Etc., | ) | No. 17 CH 14368 |
| | ) | |
| | ) | The Honorable |
| Defendants and Counterplaintiffs | ) | Anna H. Demacopoulos, |
| | ) | Judge Presiding. |
| (Pioneer UC V, LLC, Defendant and Counterplaintiff-Appellee, Katherine Morsbach and Paul Morsbach, Third-Party Defendants). | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Trial court's denial of tenant's motion for partial summary judgment was not a reviewable order following bench trial. Tenant forfeited review of claims that trial court erred in sustaining landlord's discovery objections and that damages award should be partially vacated. Trial court's award of attorney fees in favor of landlord affirmed.

¶ 2    This case involved a dispute between a commercial tenant and several successors of the tenant's original landlord over the responsibility for paying water charges. The tenant, plaintiff

Medici Gallery & Coffeehouse, Inc. (Medici), filed a claim for reformation of the lease against the successor landlords, defendants Pioneer UC V, LLC (Pioneer UC), Jakapat, LLC, and A+, Inc. d/b/a Noodles, Etc. (Noodles), and that claim was resolved through a bench trial that resulted in a judgment in favor of the defendants and against Medici. Also resolved by that bench trial was a counterclaim brought by Pioneer UC against Medici for breach of lease involving unpaid water charges, and it resulted in a judgment in favor of Pioneer UC and against Medici. Medici now appeals, raising several pretrial and posttrial issues: the denial of its motion for partial summary judgment, a ruling denying its motion to overrule objections to a supplemental discovery request, and the granting of Pioneer UC's petition for attorney fees. Medici also requests that the portion of damages exceeding the prayer for relief in Pioneer UC's counterclaim be vacated. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4        In 2001, Medici began leasing a storefront from the University of Chicago at 1331 East 57th Street in Chicago (premises), at which it operates a bakery. Section 7.1 of the written lease between them provided in part, "Tenant shall also pay for all electricity, gas, water, sewer charges (if any) and any other utility charges imposed or incurred in connection with the Demised Premises." Despite this lease provision, the water bill for the premises was paid by the University of Chicago, not by Medici, throughout the time that the University of Chicago owned the premises. In October 2016, the University of Chicago sold the building in which the premises was located to Pioneer UC, which thereafter became Medici's landlord.

¶ 5        On October 27, 2017, Medici filed a complaint naming Pioneer Acquisitions, LLC, as the defendant. It alleged that in September 2017, Pioneer Acquisitions had demanded that Medici pay future and past water charges incurred at the property. It alleged that, notwithstanding the terms of

section 7.1 of the lease, from its commencement in 2001 through September 2017, water charges for the property had been paid by the landlord, not the tenant. It alleged that the reference to "water" charges had originally been included in section 7.1 by mistake, and it sought to reform the lease to reflect the mutual intent that the landlord pay all water charges for the premises.

¶ 6   An appearance and answer to the complaint was filed on behalf of Pioneer UC, which asserted that Pioneer Acquisitions had been incorrectly named as the defendant. The answer pled that Pioneer UC had purchased the property in October 2016. It admitted that in September 2017, Pioneer UC had made a demand upon Medici to pay future water charges and past water charges from October 2016 when it had acquired the property, and it otherwise denied the material allegations of the complaint. Pioneer UC also filed a counterclaim for breach of lease against Medici based on its failure to pay water and sewer charges since October 2016. It alleged that the sum then due and owing for such unpaid charges was $17,539.58 but that charges continued to accrue, and it prayed for judgment "in the sum of $17,539.58, plus any and all additional water/sewer charges incurred for the Property." It also prayed for a 10% delinquency charge and attorney fees pursuant to the terms of the lease. Pioneer UC's counterclaim also included a count for breach of guaranty against third-party defendants Katherine Morsbach and Paul Morsbach.

¶ 7   Discovery proceeded, and on January 3, 2019, Medici filed a motion for leave to file an amended complaint adding additional defendants and to overrule objections by Pioneer UC to its supplemental discovery requests. In that motion, Medici alleged that it had recently learned that Pioneer UC had sold the property to Jakapat, which had then assigned it to Noodles. (Noodles was the other tenant of the building in which the premises was located.) As part of the sale, Pioneer UC had agreed to continue to defend Medici's claim for reformation of the lease. After learning this information, Medici issued supplemental interrogatories to Pioneer UC, requesting that it

identify those individuals involved in the sale of the property, the information they possess regarding the sale, all individuals who negotiated the sale, and the identity of the purchaser of the property. It also issued a supplemental production request seeking all documents relating to the marketing, negotiation, and sale, including financial projections and communications with any potential or actual purchasers of the property, evaluations of the merits of the litigation, and any discounts given or payments relating to the disposition of the litigation. Pioneer UC objected to these discovery requests on the basis they were not relevant to the issues of the litigation and would not lead to relevant or admissible evidence. The trial court sustained the objections by Pioneer UC.

¶ 8    The trial court did grant Medici leave to file an amended complaint naming Jakapat and Noodles as defendants. Medici then filed a first amended complaint, in which the material allegations and prayer for relief were substantially the same as its original complaint against Pioneer Acquisitions. Significantly, it included an allegation that Pioneer UC had purchased the premises in October 2016, as well as an allegation referring to Pioneer UC as the "successor" of the landlord, the University of Chicago. An appearance was filed on behalf of Jakapat and Noodles by the same law firm that represented Pioneer UC. Also on their behalf was filed an answer to the first amended complaint, affirmative defenses, and a counterclaim for unpaid water and sewer charges incurred since December 2018.

¶ 9    On December 7, 2020, Medici filed a motion for partial summary judgment. In the part pertinent to this appeal, Medici argued that Pioneer UC would not be able to establish damages on its counterclaim, inasmuch as it had no evidence of how much water usage Medici incurred at the premises between October 2016 and December 2018. Medici asserted that separate water meters for the building in which the premises was located had not been installed until June 20, 2019, and that prior to that time water service into the building was measured with a single meter. It therefore

argued that prior to the installation of the separate meters, there was no method of determining how much water was used by Medici compared to the water usage for the entire building.

¶ 10    In response, Pioneer UC argued that it had disclosed evidence of a basis upon which to compute the fair and reasonable value of its damages. It argued that its managers, Jayson Lemberg and James Peterson, had testified in discovery depositions concerning the industry standard in calculating a commercial tenant's water charge when a water meter is shared by multiple tenants, which is to allocate water usage based on a tenant's proportionate share. It argued it would show through the testimony of its witnesses at trial that the most appropriate way to calculate water charges in this case was to base it on Medici's square footage of the overall property. The trial court denied Medici's motion for partial summary judgment, and the case proceeded to bench trial.

¶ 11    Prior to trial, all counterclaims were voluntarily dismissed except for the counterclaim by Pioneer UC against Medici for breach of lease involving water charges between October 2016 and December 2018. Also, the trial court granted a motion *in limine* by Pioneer UC to bar Medici from introducing evidence or argument concerning the substance of the sale of the premises from Pioneer UC to Jakapat in 2018. That motion was granted without objection by Medici.

¶ 12    The bench trial was conducted on July 12-13, 2021. As the issues raised in this appeal do not pertain to the evidence at the bench trial, we need not set forth that evidence in any detail in this decision. Any pertinent facts from the trial are included in the analysis below. On Medici's claim for reformation of the lease, the trial court entered judgment against Medici and in favor of Pioneer UC, Jakapat, and Noodles. On the counterclaim by Pioneer UC for breach of lease, the trial court entered judgment in favor of Pioneer UC and against Medici in the amount of $18,547.45, plus a 10% contractual penalty of $1,854.75, costs, and attorney fees. The court granted leave to Pioneer UC to file an attorney fee petition.

¶ 13      In its initial attorney fee petition, Pioneer UC sought to recover $64,533.50 in attorney fees and $3,204.41 in costs, for a total of $67,737.91. The petition was supported by the affidavit of its attorney, along with 16 pages of itemized billing statements.

¶ 14      In response, Medici raised multiple arguments. One argument was that section 10.1 of the lease required 30 days' written notice before any claim for attorney fees would be allowed, and "no written notice has ever been given to begin the 30-day clock." Another argument was that Pioneer UC had not produced evidence that it possessed an interest in the lease agreement upon which it based its right to attorney fees. A third argument was that the fee petition intermingled work performed for Pioneer UC with work performed for other clients. The final argument was that the fees sought were unreasonable in that they involved work for other clients, the descriptions were too vague to determine what work was being performed and for whom, and that the fees sought were disproportionate to the amount of the controversy.

¶ 15      Pioneer UC filed a reply brief. Attached to the reply brief was an amended schedule of attorney time, which excluded $3,699.50 in fees and $237.00 in costs primarily related to the time spent on the counterclaims that were voluntarily dismissed. It also included the additional time for work done between the date it filed its initial fee petition and the date it filed its reply brief.

¶ 16      No evidentiary hearing was requested, and the trial court conducted oral argument on February 7, 2022. In its oral ruling, the trial court stated that it would not consider the issues Medici raised about Pioneer UC's standing to seek attorney fees under the lease, as these had been considered in the motion for summary judgment and at trial. It found that Pioneer UC was entitled to fees under the terms of the lease. It then considered various factors bearing on the reasonableness of the fees requested. In pertinent part, it stated that although the case itself was not complicated, novel, or difficult, "it was the persistence of the prosecution of [Medici's] case that *** extended

the litigation." It stated that the amount at stake financially was "an issue driving this litigation," as the determination as to which party was responsible for future water charges was a valuable claim to all parties, particularly Medici. It found, considering the amount at stake for future water charges, that the fees sought were not disproportionate to the recovery on the counterclaim. The trial court also noted that Pioneer UC had amended its request for attorney fees to remove entries related to work for Jakapat and Noodles on the nonsuited counterclaims. Accordingly, after allowing a further supplement to the fee petition for time spent on the hearing, the trial court entered judgment for attorney fees and costs in favor of Pioneer UC in the amount of $67,076.41. Medici thereafter filed a timely notice of appeal.

¶ 17                                     II. ANALYSIS

¶ 18                    *A. Denial of Motion for Partial Summary Judgment*

¶ 19         Medici's first argument on appeal is that the trial court erred in denying its motion for partial summary judgment. In that motion, Medici had argued that Pioneer UC would be unable to prove damages on its counterclaim because separate water meters had not been installed at the building until June 20, 2019. Medici argues on appeal that, as of the time the trial court ruled on summary judgment, it had no evidence before it about the amount of water used in connection with the premises. It asserts that the only evidence then before the trial court was that Pioneer Acquisitions had incurred water bills involving a different address.

¶ 20         The general rule is that when a case proceeds to trial after the denial of a motion for summary judgment, the order denying the motion for summary judgment merges into the judgment and is not appealable. *Wheeler Financial, Inc. v. Law Bulletin Publishing Co.*, 2018 IL App (1st) 171495, ¶ 66; *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 42. The rationale for this rule is that the subsequent verdict is necessarily based on a more complete presentation of

the evidence than was the motion for summary judgment. *Wheeler Financial*, 2018 IL App (1st) 171495, ¶ 66. Only where the issue on summary judgment involves a question of law that would not be considered by a jury does an exception apply to this rule. *Id.* ¶ 67.

¶ 21        Here, the general rule applies. Medici's argument about whether Pioneer UC could establish a basis for calculating damages given that separate water meters had not been installed until June 2019 presented a question of fact that was appropriate for resolution at trial. Evidence on this issue was in fact presented at trial. In its posttrial ruling, the trial court specifically addressed this issue, stating that Lemberg's testimony sufficiently established that the industry standard for allocating water usage among tenants using a single water meter was to do so *pro rata* based on occupancy percentage. Medici has not challenged this posttrial ruling as contrary to the manifest weight of the evidence. Accordingly, the issue cannot be reviewed in the context of an earlier denial of a motion for partial summary judgment.

¶ 22                    *B. Sustaining of Objections to Supplemental Discovery*

¶ 23        Medici's second argument on appeal is that the trial court abused its discretion when it sustained objections by Pioneer UC to Medici's supplemental interrogatories and production request, which sought information about the 2018 sale of the premises from Pioneer UC to Jakapat. In its brief, Medici asserts that the "ownership of the interests in the lease agreement in this case were highly relevant," and its discussion then focuses on the 2016 sale between Pioneer UC and the University of Chicago. Medici argues that Pioneer UC "filed a counterclaim based on an assignment of rights to a lease agreement between University of Chicago and Medici," but "no evidence is contained in the record indicating that Pioneer UC V had anything whatsoever to do with the rights associated." Medici asserts that Pioneer UC "claims to own a chose of action, but produces no evidence and refuses to swear under oath that [it] is the *bona fide* owner." It asserts

that the trial court's sustaining of the objections prejudiced it by preventing it from proving affirmative defenses that would have defeated the counterclaim. It urges this court to vacate the results of the bench trial and the award of attorney fees as a result.

¶ 24     There are several problems with Medici's argument. Most significantly, it has forfeited review of this issue by failing to provide a transcript of the ruling or a bystander's report, thereby preventing this court from understanding the basis on which the trial court exercised its discretion in sustaining these discovery objections to determine whether such discretion was abused. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts arising from the incompleteness of the record are resolved against the appellant, and we presume in such circumstance the trial court's order had a sufficient basis in law and fact. *Id.* at 392.

¶ 25     However, even if we overlook this forfeiture, we find the supplemental discovery at issue to be irrelevant to the issues involved in the trial. The supplemental discovery pertained only to the 2018 sale of the premises from Pioneer UC to Jakapat, not to the 2016 sale from the University of Chicago to Pioneer UC. Prior to trial, the counterclaim by Jakapat and Noodles against Medici was voluntarily dismissed, and Medici agreed to the entry of an order *in limine* barring any evidence or argument concerning that 2018 sale at the trial. Accordingly, we fail to see what relevance the 2018 sale had to the issues at trial, which involved questions of what Medici and the University of Chicago intended in 2001 concerning the payment of water charges and whether Medici breached the lease by not paying water charges during the two-year period prior to the 2018 sale.

¶ 26     Moreover, we reject the notion raised in Medici's appellate brief that these supplemental discovery requests had any bearing on Pioneer UC's rights under the lease to collect payments for water charges. Even if they did so broadly, we find no effort by Medici prior to verdict to raise any issue concerning Pioneer UC's ownership of the premises from October 2016 to December 2018

or whether Pioneer UC had interests in the lease that it could properly enforce. As discussed in greater detail in paragraph 30 below, Medici conceded these issues and did not raise them until its posttrial response to Pioneer UC's petition for attorney fees. For all these reasons, we reject Medici's argument that this supplemental discovery was relevant or that Medici was prejudiced in its defense of the counterclaim by the trial court's sustaining of Pioneer UC's objections.

¶ 27                                    *C. Granting of Petition for Attorney Fees*

¶ 28                                *1. Evidence of Pioneer UC's Interest in the Lease*

¶ 29        Medici's third argument on appeal is that the trial court erred by granting Pioneer UC's petition for attorney fees. This is a three-part argument. We begin with Medici's assertion that that Pioneer UC failed to produce "evidence that it possesses a legally cognizable interest in the lease agreement upon which it bases its right to attorney's fees." In other words, Medici contends that Pioneer UC failed to produce evidence of an assignment by the University of Chicago of its interest in the lease. In its oral ruling, the trial court stated that it had considered issues of standing in the motion for summary judgment and the bench trial, and it was not appropriate to consider them again in the petition for attorney fees.

¶ 30        We find no error in the trial court's refusal to deny attorney fees on this basis. It is evident from our review of the record that, in the nearly four-year period during which this litigation was pending prior to the petition for attorney fees, Medici never challenged whether Pioneer UC had a valid interest in the lease or was the proper entity to enforce or defend the lease's provisions. It is true that, when Medici first filed its complaint, it named Pioneer Acquisitions as defendant. However, after an appearance and answer were filed on behalf of Pioneer UC asserting that Pioneer Acquisitions had been incorrectly named, Medici appears to have accepted this representation and thereafter treated Pioneer UC as the proper defendant in its claim for reformation of the lease term

involving water charges. Likewise, Medici never raised this matter as a defense to Pioneer UC's counterclaim for breach of lease. Instead, Medici alleged in paragraph 12 of its first amended complaint that Pioneer UC purchased the premises in October 2016, and in paragraph 26 it referred to Pioneer UC as the "successor" landlord to the University of Chicago. Furthermore, Medici's attorney's questioning of witness and argument at trial proceeded under the assumption that Pioneer UC had an interest in the lease. For example, during his adverse examination of Lemberg, Medici's attorney elicited testimony that Pioneer Acquisitions was a real estate investment company that formed multiple purchasing entities, each comprised of different investors, to purchase various real estate from the University of Chicago. One of the entities it formed was Pioneer UC, and that was the entity that in 2016 purchased the building in which the premises was located.

¶ 31    The issue of whether Pioneer UC had an interest in the lease was central both to Medici's claim for reformation of the lease and to Pioneer UC's counterclaim for breach of lease. If Medici intended to dispute this fact, it should have done so at a sufficiently early point in the proceedings so that the issue could have been resolved at trial. *Metropolitan Water Reclamation District of Greater Chicago v. Terra Foundation for American Art*, 2014 IL App (1st) 130307, ¶ 54. By waiting to raise it for the first time in response to the posttrial petition for attorney fees, we hold that Medici waived consideration of it as a basis for denying attorney fees. *Id.* ¶ 55.

¶ 32                    *2. 30 Days' Written Notice of Unpaid Water Charges*

¶ 33    Medici's second argument concerning attorney fees is that section 10.1 of the lease, upon which Pioneer UC bases its right to fees, required Pioneer UC to provide Medici with 30 days' written notice that it was in default for failure to pay a specific sum of water charges incurred at the premises before attorney fees would be recoverable. It contends that no such notice was given

at the time Pioneer UC filed its counterclaim or at any point thereafter to "begin the 30-day clock." Medici does not present this argument as a matter of contract interpretation. Instead, the gist of its argument is that Pioneer UC's counterclaim, which was filed on December 21, 2017, cannot serve as the requisite written notice because the water bills that were attached to it as exhibits were for water usage at a different site and were addressed to Pioneer Acquisitions, not to Pioneer UC. It also faults Pioneer UC for failing to file an amended counterclaim attaching the correct water bills after the trial court granted it leave to amend the pleadings to conform to the testimony at trial concerning the water charges paid by Pioneer UC at the premises.[1]

¶ 34        Medici raised this argument in the trial court in its response to the fee petition, under the heading that the court "lacks subject matter jurisdiction and/or standing." The trial court stated in its oral ruling on the fee petition that it would not consider matters concerning subject matter jurisdiction or standing, because those had been considered on summary judgment and at trial. At trial, Medici had made a closely related argument that Pioneer had failed to present evidence of a demand on Medici to pay a specific amount for past water charges by a specific time, and for this reason Medici was not "delinquent" on a payment for purposes of imposing a 10% delinquency charge or attorney fees under section 10.1 of the lease. The trial court rejected this argument, ruling that Medici had made a judicial admission in its complaint, filed October 27, 2017, that a demand

---

[1] In addition to the bakery that Medici operates at the premises, it also operates a restaurant at the building next door. The evidence at trial showed that, when Pioneer UC purchased the premises in 2016, the City of Chicago inadvertently put the water bill for Medici's restaurant into Pioneer Acquisitions' name also, and this mistake was not caught for over a year. The water account number for Medici's restaurant ends in 596, and the account number for the building housing the premises (*i.e.*, Medici's bakery) ends in 597. When Pioneer UC filed its counterclaim, it attached seven water bills ending in 596. The water bills that were introduced into evidence at trial all had an account number ending in 597. At the conclusion of evidence, the trial court granted Pioneer UC leave to amend the pleadings to conform to the proofs, which was that the water bills for which it was seeking recovery were those ending in 597 that were the subject of testimony at trial, not those ending in 596 that were attached to the counterclaim. There was no discussion that a formal amended counterclaim would be filed, and no such document was in fact filed.

had been made on it to pay past and future water charges in September 2017. The court found that starting December 21, 2017, when the counterclaim was filed, Medici was aware of a specific demand for payment. And it found that the 10% delinquency charge would commence from February 23, 2018, the date Medici answered the counterclaim denying that it had paid water charges as demanded therein.

¶ 35    For its part, Pioneer UC's response to Medici's argument is that there is no condition precedent in the lease requiring the landlord to send any 30-day written notice to pay before attorney fees are recoverable. It argues that, according to the trial court's ruling discussed in the preceding paragraph, by at least February 23, 2018, Medici was delinquent in not paying for water and sewer charges. Accordingly, it contends that its attorney fees were incurred to collect this delinquency of unpaid water charges, to enforce its right to collect for water charges owed by Medici under the lease, and to defend against Medici's reformation claim.

¶ 36    Although the parties do not present this as an issue involving contract interpretation, its resolution requires looking to the language of the lease. Where a party challenges a trial court's authority to award attorney fees under the terms of a contract, issues involving the interpretation of contract provisions are questions of law that we review *de novo*. *Northbrook Bank & Trust Co. v. Abbas*, 2018 IL App (1st) 162972, ¶ 61. A court's primary objective when interpreting a contract is to ascertain and given effect to the parties' intent as shown by the contract's plain language, read as a whole and reasonably interpreted. *Chandra v. Chandra*, 2016 IL App (1st) 143858, ¶ 17.

¶ 37    Section 10.1 of the lease is a lengthy provision, which we need not set forth in its entirety. Its first paragraph delineates five kinds of events that constitute default by the tenant and thereby authorize the landlord to cancel the lease and retake immediate possession. The provision relied upon by Medici is in subparagraph (d) of this first paragraph, which provides in part that the tenant

defaults "if the Tenant shall fail, neglect or refuse to keep and perform any of the other covenants, conditions, stipulations or agreements contained and covenanted and agreed to be kept and performed by it, *and in the event any such default shall continue for a period of more than thirty (30) days after notice in writing given to the Tenant by the Landlord.*" (Emphasis added.) Section 10.1 then continues with two paragraphs setting forth the landlord's options to take possession of the premises and re-lease it without terminating the lease, as well as the manner by which rents shall be applied in that situation. Section 10.1 then concludes with a final paragraph allowing delinquency charges and recovery of attorney fees:

"A monthly delinquency charge may be imposed upon the delinquent Tenant and shall be paid by Tenant, but such monthly charge may in no event exceed ten percent (10%) of the delinquent payment. Collection costs and reasonable attorneys' fees shall also be paid if delinquencies are referred for collection or enforcement of any provisions of this Lease."

¶ 38    Based on our reading of section 10.1 in its entirety, we agree with the interpretation advanced by Pioneer UC that the giving of 30 days' written notice of unpaid water charges is not a condition precedent for the recovery of attorney fees. The requirement of 30 days' written notice pertains to one of the ways a tenant may default, thereby authorizing the landlord to terminate the lease. In other words, if the tenant fails to keep any covenants, etc., that it has agreed to keep under the lease and does so for more than 30 days after the landlord gives the tenant written notice, then the landlord may cancel the lease and re-take the premises. However, despite the inclusion of both the tenant-default provisions and the attorney fee provision in section 10.1, nothing in the plain language links the recovery of attorney fees in the last paragraph to the events of default as they are defined in the first paragraph. Instead, it allows recovery of attorney fees if "delinquencies"

are referred for collection or enforcement of any provisions of the lease. That last paragraph of section 10.1 appears to be the only place in the entire lease where the term "delinquencies" or a similar term is used. This is not a term defined in the lease, but the dictionary definition of "delinquency" is "a debt on which payment is overdue." Merriam-Webster's Collegiate Dictionary 305 (10th ed. 2002). We see nothing in the plain language of section 10.1 that indicates the parties intended to incorporate the events of default into the definition of "delinquencies" or for these terms to mean the same thing. Accordingly, we conclude that the giving of 30 days' written notice is not a condition or requirement for attorney fees to be recoverable.

¶ 39       Furthermore, we reject any argument by Medici that it had insufficient notice of Pioneer UC's position that it was delinquent in the payment of past water charges or that Pioneer UC intended to seek attorney fees for its collection efforts. The trial court found that Medici had made a judicial admission that a demand had been made on it to pay past and future water charges in September 2017, and Medici does not challenge this finding on appeal. Medici got ahead of the matter by filing its complaint for reformation of the lease in October 2017. By the time Pioneer UC filed its counterclaim on December 21, 2017, it is clear that Medici knew that Pioneer UC was demanding a specific amount for past water charges and that it intended to seek attorney fees. Medici admitted in its answer to the counterclaim that it had not paid that amount. For three and a half years thereafter, Medici's litigation position was that it did not owe any water charges on the premises because the original intent of the parties to the lease had been that water charges were payable by the landlord. Medici's defense never had anything to do with incorrect water bills being attached as exhibits to the counterclaim, and we fail to see how Medici suffered any prejudice from this mistake. Likewise, we find it irrelevant to the issue of notice or the recovery of attorney fees that Pioneer did not formally file an amended counterclaim attaching the correct water bills after the

trial court granted it leave to conform its pleadings to the proofs at trial.

¶ 40                             *3. Reasonableness of Fees Requested*

¶ 41        Medici's final argument concerning attorney fees is that Pioneer UC failed to meet its burden of proving the reasonableness of the attorney fees requested due to its inclusion of billing for work done for the other parties its attorney represented, vague billing entries, and a disproportionality between the fees sought and the monetary recovery.

¶ 42        Where an award of attorney fees is allowed, the party seeking fees bears the burden of presenting sufficient evidence from which the trial court can render a decision as to whether the fees are compensable. *900 North Rush LLC v. Intermix Holdco, Inc.*, 2019 IL App (1st) 181914, ¶ 44. The petition must specify the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged. *Id.* ¶ 43. The petitioner must present detailed records maintained during the litigation containing the facts and computations upon which the charges are predicated. *Id.* ¶ 44. Among the factors for a trial court to consider in determining the reasonable value of an attorney's services are: the skill and standing of the attorney employed; the nature of the cause and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. *Id.* ¶ 41. In conjunction with these factors, the trial court may also consider whether the fees are proportional to the recovery. *Crystal Lake Limited Partnership v. Baird & Warner Residental Sales, Inc.*, 2018 IL App (2d) 170714, ¶ 87. A trial court has broad discretion to award attorney fees, and its decision will not be disturbed absent abuse of that discretion. *900 North Rush*, 2019 IL App (1st) 181914, ¶ 41. This standard of review is due to the trial court's superior understanding of the litigation and the desirability of avoiding frequent

appellate review of what essentially are factual matters. *Advocate Health & Hospitals Corp. v. Heber*, 355 Ill. App. 3d 1076, 1078-79 (2005).

¶ 43    Medici argues that much of the work described in Pioneer UC's billing entries were solely for the benefit of Jakapat and Noodles and that other entries commingled work done for multiple clients. It also argues that various billing entries are too vague about what work is being performed for which client to enable a determination of reasonableness. However, Medici's appellate brief does not cite any specific billing entries with which it takes issue on these grounds. We note that the argument that Medici makes on this point in its appellate brief is identical to the argument that it made in its response brief in the trial court, and its making of this argument in the trial court prompted Pioneer UC to submit an amended fee statement reducing its fee request by $3,699.50 to remove entries primarily involving work done on the nonsuited counterclaims. The trial court specifically recognized in its oral ruling that Pioneer UC had done this to satisfy the objection by Medici. However, Medici's appellate brief does not acknowledge that its objection on this basis was at least partially satisfied, nor does not identity any billing entries for which fees were inappropriately awarded on this basis after Pioneer UC amended its petition. Accordingly, we have no basis upon which to find abuse of discretion by the trial court on these grounds.

¶ 44    Medici also argues that the fee award of $67,076.41 was disproportionate to the amount in controversy or to Pioneer UC's recovery of $20,402.20 on its counterclaim. As stated above, the proportionality of fees to the recovery is a factor that the trial court may consider in conjunction with the other reasonableness factors. *Crystal Lake Limited Partnership*, 2018 IL App (2d) 170714, ¶ 87. Here the trial court rejected the argument that the fees sought were disproportionate to the recovery in this case, reasoning that the value of the case was not limited to the counterclaim by Pioneer UC for water charges between October 2016 and November 2018. Rather, it found that

what "was really driving this litigation" was the value of the claim involving which party had the future obligation to pay water charges for the remaining duration of the lease.[2] It reasoned that the resolution of that claim would have a future financial impact on Medici as well as the defendant landlords, that Medici had been persistent in its prosecution of this claim, and that Pioneer UC had been obligated to defend this claim as a result of Medici's persistent prosecution and as a term of its sale of the property to Jakapat, which had also prevailed on the reformation claim.

¶ 45    We find that the argument concerning proportionality was appropriately considered by the trial court, which was far more familiar with the work involved in the underlying litigation and the issues driving it than this court is. The trial court's decision on the matter was not unreasonable, and we find no abuse of discretion on this basis.

¶ 46                        *D. Vacating Portion of Damages Award*

¶ 47    Medici's final argument on appeal is that the portion of the monetary judgment on Pioneer UC's counterclaim that exceeded the amount requested in its pleading should be vacated and modified. The prayer for relief in Pioneer UC's counterclaim requested judgment "in the sum of $17,539.58, plus any and all additional water/sewer charges incurred for the Property, plus a delinquency charge, plus attorneys' fees, and costs of suit to date and hereafter." Following the trial, judgment was entered in the amount of $20,402.20 (comprised of $18,547.45 and a 10% contractual penalty of $1,854.75), plus costs and attorney fees.

¶ 48    First, we find that Medici has forfeited review of this issue by failing to raise it before the trial court. It is well-established that issues not raised in the trial court are forfeited and may not be raised for the first time on appeal. *Lobo IV, LLC v. V Land Chicago Canal, LLC*, 2019 IL App

---

[2] Although the actual water bills presented at trial are not included in the record on appeal, it appears that the water charges for the subject property are approximately $9000 per year.

(1st) 170955, ¶ 72. Even if we again overlook this forfeiture, we reject the argument on the merits. The only authority relied upon by Medici is *Lo v. Provena Covenant Medical Center*, 356 Ill. App. 3d 538, 542 (2005), which it cites for the proposition that " '[t]he complaint frames the issues for the court and circumscribes the relief it can award.' " However, the issue in *Lo* was whether a physician's prayer for an injunction against a hospital's reducing and restricting of his clinical privileges had been rendered moot by his failure to timely request a hearing following the hospital's subsequent denial of his application to renew his privileges. *Id.* at 541-42. That case did not involve a money judgment that exceeded the *ad damnum* in the complaint's prayer for relief.

¶ 49 In this case, the damages awarded by the trial court were consistent with the prayer for relief in the counterclaim. At the time it was filed, Pioneer UC could not know the amount of future water or sewer charges that would become due or the corresponding contractual delinquency charges that would accrue as a result. There is nothing improper about the way the prayer for relief informed Medici that these charges were being sought. Furthermore, under section 2-604.2 of the Code of Civil Procedure (735 ILCS 5/2-604.2 (West 2020)), the specific sum requested in the counterclaim does not limit what the trial court can award, so long as Medici is protected from prejudice by reason of surprise. That statute provides that, except in personal injury cases, every count of a complaint or counterclaim "must request specific remedies the party believes it should receive from the court." *Id.* § 2-604.2(a). "Except in the case of default, the remedies requested from the court do not limit the remedies available." *Id.* § 2-604.2(c). If a party seeks remedies other than those listed in the compliant or counterclaim, the adverse party must be protected against prejudice by reason of surprise. *Id.* Based on the allegations of the counterclaim, there can be no surprise to Medici in the trial court's awarding of a judgment that included water or sewer charges incurred subsequent to the filing of the counterclaim or a delinquency charge based on those

amounts. Accordingly, no basis exists for modifying the damages awarded by the trial court.

¶ 50                                *E. Request for Remand*

¶ 51       Pioneer UC requests that this court remand this case to the trial court to allow it to file a petition for attorney fees incurred in defending this appeal. However, given this court's affirmance of the trial court's judgment, no formal remand is necessary for the trial court to entertain a petition for attorney fees incurred on appeal once the mandate is filed in that court. See Ill. S. Ct. Rule 369(b) (eff. July 1, 1982); *Stein v. Spainhour*, 196 Ill. App. 3d 65, 68 (1990).

¶ 52                             III. CONCLUSION

¶ 53       For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 54       Affirmed.